**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, | ) | Case No. 1:26-cv-6173 |
| Plaintiff, | ) | |
| v. | ) | |
| ADVANTAGE INSURANCE SERVICES, INC. and DOES 1-8, | ) | **Jury Trial Demanded** |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

1. Plaintiff Robert Hossfeld is a consumer privacy advocate who registered his residential telephone number on the National Do Not Call Registry (the "DNCR") in 2015.

2. Over the course of April and May 2026, Advantage Insurance Services, Inc. ("Defendant") placed nine telemarketing calls to Plaintiff's residential cellular telephone number to promote insurance products and services.

3. The calls followed the same pattern each time: the caller identified themselves as calling from Assurant Health, asked personal screening questions, and attempted to move Plaintiff into a sales transfer. Plaintiff never invited these calls, never consented to them, and never agreed to receive them.

4. The TCPA prohibits telemarketing calls by or on behalf of a business to residential telephone numbers that are on the National Do Not Call Registry ("DNCR") unless the business has first obtained written consent. 47 C.F.R. § 64.1200(c)(2).

5. Defendant's conduct was not a mistake or an isolated event. Defendant maintained and implemented a uniform telemarketing campaign directed at consumers whose numbers were called for Defendant's benefit and using Defendant's sales pitch.

6. Defendant's policies encourage and allow calls to numbers registered on the DNCR even when Defendant has not obtained consent from the consumer to permit calling to the consumer's phone number.

7. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227, to stop these unwanted telemarketing invasions. Accordingly, Plaintiff seeks to enforce that law on behalf of himself and a class of similarly situated consumers, and to obtain the damages and injunctive relief the statute authorizes, to enjoin Defendant from calling any person at a number registered on the DNCR with whom it does not have a contractual relationship providing express consent to call.

## PARTIES

8. Plaintiff Robert Hossfeld is a natural person who resides in Bell County, Texas. Plaintiff Hossfeld received the calls described herein on his residential cell phone number, 254-xxx-8888, which he registered on the DNCR in 2015. His phone number is not associated with any business and is for personal use. Plaintiff is the subscriber for the phone number as part of his family's phone plan.

9. Defendant Advantage Insurance Services, Inc. ("Defendant") is an Illinois corporation headquartered in Naperville, Illinois. Defendant is an insurance agency engaged in the business of selling personal insurance policies and has been in operation since 2001.

10. Defendants Does 1-8 represent insurance and similar companies, whose products and services these calls were designed to market and – hopefully – sell.

## JURISDICTION AND VENUE

11. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

12. The Court has personal jurisdiction over Defendant because they conducted the telemarketing complained of to be made into and within Illinois, for the purpose of gaining Illinois customers. Defendant has gained thousands of customers or otherwise profited through similar telemarketing in Illinois.

13. Defendant regularly and systematically advertises or facilitates advertising to Illinois consumers through telemarketing, and regularly and systematically generates profit through business in Illinois as a result.

14. Defendant imposed the marketing policies, practices, and procedures for marketing that this lawsuit contests, and those policies, practices, and procedures were implemented and effective as to calls made to consumers in this District.

15. Defendant has, on information and belief, thousands of customers ("subscribers" or "members") who are Illinois citizens residing in this District, including at least 100 whose business were solicited through calls made pursuant to the policies and practices at issue in this action.

16. The violations alleged herein relate to Defendant's ties to Illinois, because the purpose of the phone calls at issue was to gain more customers for Defendant's benefit.

17. Defendant adheres to the same DNCR policies and practices, regardless of the state into which calls are made.

18. Plaintiff Hossfeld and the putative class members' claims arise out of the same

series of transactions or occurrences, i.e., telemarketing calls selling insurance based upon the same flawed policies, practices and procedures.

19. Plaintiff Hossfeld and the putative class members' claims rise and fall based upon substantially identical questions of law and fact, such as whether Defendant's policies and practices were consistent with the TCPA.

20. Venue is appropriate in this District because Defendant is headquartered in this District, and because a substantial part of the events or omissions giving rise to the claim occurred here, including the fact that, on information and belief, multiple class members received the calls that are the subject of this case while in this District.

## FACTS

### Plaintiff Hossfeld's Experience

21. Between April 7, 2026, and May 5, 2026, Plaintiff received at least nine telephone calls to his residential cell phone number. Each of the calls of which Plaintiff is aware are identified in this chart, and described below:

| Date | Time | Caller's Phone Number |
|---|---|---|
| 4/7/2026 | 9:16 AM | 325-576-8645 |
| 4/13/2026 | 8:41 AM CT | 254-356-5781 |
| 4/13/2026 | 11:39 AM CT | 325-532-2982 |
| 4/17/2026 | 9:22 AM CT | 254-536-2651 |
| 4/18/2026 | 12:07 PM CT | 325-532-2535 |
| 4/29/2026 | 3:18 PM CT | 754-484-2627 |
| 5/4/2026 | 11:51 AM CT | 325-339-2495 |
| 5/4/2026 | 2:37 PM CT | 325-345-1961 |

| | | |
|---|---|---|
| 5/5/2026 | 10:15 AM CT | 940-905-1890 |

22. On April 7, 2026, at or around 9:16 a.m. CT, Plaintiff received a telephone call from caller ID 325-576-8645 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health. The caller indicated that he could save Plaintiff money on car insurance, and asked Plaintiff to verify details such as Plaintiff's age and physical location. The caller also asked whether Plaintiff was insured by Allstate for auto insurance. The caller then attempted to connect Plaintiff with a licensed agent for the purpose of selling him auto insurance, but the call terminated before the transfer completed.

23. On April 13, 2026, at or around 8:41 a.m. CT, Plaintiff received a telephone call from caller ID 254-356-5781 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health. The caller told Plaintiff the call was to verify his details and to connect Plaintiff with a licensed insurance agent to sell an automobile insurance policy. The caller asked Plaintiff to provide basic demographic information, and whether Plaintiff was insured by Allstate. The caller stated that their company works with Allstate, among others. The caller then attempted to connect Plaintiff with an insurance agent, but the call terminated before the transfer completed after Plaintiff asked the caller to confirm the state that the caller was located in.

24. On April 13, 2026, at or around 11:35 a.m. CT, Plaintiff received a telephone call from caller ID 325-532-2982 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health. The caller asked whether Plaintiff was looking for an automobile insurance quote, but the call terminated before the caller transferred Plaintiff to an insurance agent.

25. On April 17, 2026, at or around 9:22 a.m. CT, Plaintiff received a telephone call from caller ID 254-536-2651 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health about "the new state approved home and auto insurance plan." The caller indicated that he could save Plaintiff money on car insurance, and asked Plaintiff to verify details such as Plaintiff's age and physical location. The caller then attempted to connect Plaintiff with a licensed agent for the purpose of selling him auto insurance, but the call terminated before the transfer completed after Plaintiff asked the caller to confirm a callback number.

26. On April 18, 2026, at or around 12:07 p.m. CT, Plaintiff received a telephone call from caller ID 325-532-2535 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health about an auto insurance quote. Plaintiff was told the call was to verify his details and to connect Plaintiff with a licensed insurance agent to sell an automobile insurance policy. The caller asked Plaintiff to provide basic demographic information including Plaintiff's age, location, and accident history. The caller asked whether Plaintiff was currently insured with Allstate auto insurance; Plaintiff responded no. The caller attempted to connect Plaintiff with an insurance agent, but the call terminated before the transfer completed.

27. On April 29, 2026, at or around 3:18 p.m. CT, Plaintiff received a telephone call from caller ID 754-484-2627 on his cellular telephone. Plaintiff answered, and the caller stated they were calling about "the new state approved home and auto insurance plan." The caller indicated that he could save Plaintiff money on car insurance, and asked Plaintiff to verify details such as Plaintiff's age and physical location. The caller also asked whether Plaintiff was insured by Allstate for auto insurance. The caller then attempted to connect Plaintiff with a licensed agent for the purpose of selling him auto insurance, but the call terminated before the transfer

completed after Plaintiff asked the caller to confirm the name of the company that the caller worked for.

28. On May 4, 2026, at or around 11:51 a.m. CT, Plaintiff received a telephone call from caller ID 325-339-2495 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health about “the new state approved home and auto insurance plan.” Plaintiff was told the call was to verify his details and to connect Plaintiff with a licensed insurance agent to sell an automobile insurance policy. The caller asked Plaintiff to provide background information such as age and physical location, and whether Plaintiff was currently insured with Allstate auto insurance. The caller attempted to connect Plaintiff with a licensed agent, but the call terminated before the transfer completed after Plaintiff asked the caller to identify the company that the caller was attempting to make the transfer with Plaintiff.

29. On May 4, 2026, at or around 2:37 p.m. CT, Plaintiff received a telephone call from caller ID 325-345-1961 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health about “the new state approved home and auto insurance plan.” Plaintiff was told the call was to verify his details and to connect Plaintiff with a licensed insurance agent to sell an automobile insurance policy. The caller asked Plaintiff to provide background information such as age and physical location, and whether Plaintiff was currently insured with Allstate auto insurance. The caller attempted to connect Plaintiff with an insurance agent, but the call terminated before the transfer completed.

30. During the call, Plaintiff requested the caller to provide a callback number. The caller stated “I’ll be the one to give you a call back. So is that okay with you?”; Plaintiff responded no, then the caller stated “All right” and terminated the call.

31. On May 5, 2026, at or around 10:15 a.m. CT, Plaintiff received a telephone call from caller ID 940-905-1890 on his cellular telephone. Plaintiff answered, and the caller stated they were calling from Assurant Health about a "free quote for the new state approved home and auto insurance." The caller asked whether Plaintiff was currently insured with Allstate auto insurance and whether he had any tickets or at fault accidents within the past three years. Plaintiff asked why the caller asked whether Plaintiff was insured with Allstate and then the caller hung up.

32. Upon information and belief, Defendant itself made the calls alleged above. Alternatively, Defendant authorized an unknown third party to make telemarketing calls on its behalf.

33. The calls Plaintiff received were made for the purpose of trying to sell goods and services for the benefit of Defendant. Defendant knew that such calling was being performed on its behalf and authorized it.

34. The telemarketing Plaintiff received was made pursuant to instructions, directives, and policies set forth by Defendant.

35. Plaintiff did not provide "prior express invitation or permission," or other consent for these calls.

36. Defendant distributes their insurance products through a common network of direct writing agents overseen by and in tandem with Defendant.

37. To the extent Defendant may not be held directly liable for the calls and violations at issue by virtue of some person having initiated the subject calls on its behalf, Defendant should be held liable for any TCPA violations arising from such calls.

38. Defendant knowingly enjoys the financial, advertising, and other benefits of the

illegal calling challenged here.

39. Defendant generates money through sales of their insurance products and ongoing customer relationships, including those derived from the illegal calling alleged herein.

40. Defendant thus has a financial incentive in the sale of policies, including through the telemarketing at issue.

41. On information and belief, Defendant dictates what the agents' contract with Defendant looks like and sets the rules and practices for their agents (or in the alternative, telemarketing lead vendors) to follow, which are enforced at Defendant's direction.

42. Plaintiff and other class members reasonably believed Defendant authorized the calls at issue, based on Defendant's own actions—including through requiring or authorizing use of their tradenames, granting the telemarketer access to detailed and proprietary customer, product, and pricing information used in such calls, authorizing agent telemarketers to bind Defendant through sales derived through such calls, and retaining revenue and providing the insurance purchased as a result of such.

43. A telemarketing call to sell insurance is the type of interaction where the caller customarily carries authority to do specific types of acts on behalf of the agent and insurance company principal, such as market insurance policies.

44. Defendant knew that its agents or employees (and/or in the alternative, telemarketing lead vendors) were telemarketing on its behalf in a manner that resulted in TCPA violations as described herein, but failed to take adequate steps to prevent or stop such. Instead of repudiating the calls and business derived therefrom, Defendant have knowingly continued to enjoy the benefits of the marketing, such as the advertising benefit and acceptance of revenue from purchases derived therefrom.

45. Defendant knows that the telemarketing calls made directly by its agents (or, alternatively, through telemarketing lead vendors on its behalf) fail to comply with laws such as the TCPA's National Do Not Call Registry regulations, but allow such to continue in spite of this, in order to quickly and cheaply gain customers and revenue.

46. Defendant's actions and omissions with regard to the telephone solicitations and telemarketing calls complained of herein justify a reasonable assumption that it consented to the calls.

47. Defendant knowingly accepted business that originated through the improper calling at issue by compensating its agents and/or other telemarketers for doing so, and providing the insurance purchased through the calling, and retaining revenue from such.

48. Alternatively, to the extent that Defendant lacked full knowledge about every aspect of the telephone solicitations complained of herein, it failed to investigate further despite knowledge that would have caused a reasonable person to do so. Indeed, Defendant had a myriad of controls, investigatory, and audit rights at its fingertips that it could have used to ensure TCPA compliance, but elected not to do so.

49. These violations were negligent. Alternatively, they were willful and knowing.

50. On information and belief, Plaintiff received additional calls from or on behalf of Defendant that were initiated for the purpose of encouraging the purchase of Defendant's products or services, other than the calls alleged specifically herein. While the service or equipment used to make such calls was capable of allowing the display of a legitimate telephone number, the calls were made instead using disparate caller IDs, designed to trick consumers into answering calls. Plaintiff expects such calls to be identified in discovery.

51. Although Defendant may generally have policies and procedures in place to try to

avoid violating the DNCR provisions of the TCPA, those policies and procedures are not reasonable and do not align with the requirements of the TCPA.

52. Upon information and belief, based upon the fact that Plaintiff received the subject calls despite being on the DNCR, one way Defendant's policies and procedures do not align with the TCPA, is that they permit calls to telephone numbers that are on the DNCR without first obtaining consent to contact consumers at such numbers.

53. Although a widespread practice within the insurance industry, obtaining consent or an "opt-in" through a third party such as a lead generator is impermissible under the plain language of the TCPA's DNCR rules, 47 C.F.R. § 64.1200(c)(2), because those regulations require that there be a written agreement between the consumer and the seller.

54. Because Defendant's policies, practices, and procedures do not comply with the TCPA, there are undoubtedly others who, like Plaintiff, have received telemarketing calls by or on behalf of Defendant, after they requested not to receive such.

55. Plaintiff and the class have been damaged by these calls. Their privacy was improperly invaded, the calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Plaintiff and the class. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following classes:

> **DNC Registry Class.** All persons within the United States whose residential cellular or landline numbers Defendant or someone on its behalf called more than

once in a 12-month period for purposes of encouraging the purchase of products or services through Defendant, where (1) the person's phone number had been registered with the National Do Not Call Registry for more than 31 days at the time of the call; and (2) Defendant's records do not reflect either of the following:

> (1) (a) Defendant provided the consumer with a "one-to-one" signed, written agreement between: (i) the consumer, and (ii) Defendant, before the call;
>
> (b) the consumer signed such agreement, after having consented to engage in an electronic agreement with the Defendant;
>
> (c) which states – separate and distinguishable from advertising copy or other disclosures – that the consumer agrees to be contacted by Defendant at the phone number called, *or*
>
> (2) that the person had transacted business with the Defendant on whose behalf the call was made in the past 18 months, or made an inquiry[1] with such Defendant about its products or services within the past 3 months, without a subsequent do-not-call request.

**Texas Sub-Class.** All persons residing in the State of Texas to whom Defendant, or a person acting on Defendant's behalf, made more than one telephone solicitation within a twelve-month period, while the telephone number called had been registered on the National Do Not Call Registry for more than 31 days, and for whom Defendant's records do not reflect prior express invitation or permission or an established business relationship..

57. Upon information and belief, Defendant or some person on its behalf called more than 1,000 persons in 2026, as part of the telemarketing campaign that Plaintiff was called.

58. Common questions of law or fact exist as to all members of the classes, which predominate over any questions solely affecting any individual member, including Plaintiff. Such common questions include but are not limited to:

a. Whether Defendant had established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone

[1] "An established business relationship cannot be formed solely on the basis of a prior solicitation." *Telephone Consumer Protection Act Telephone Solicitations, Autodialed and Artificial or Prerecorded Voice Message Telephone Calls, and the Use of Facsimile Machines*, 8 FCC Rcd. 506, 506 (1993).

solicitations in violation of the TCPA's National Do Not Call Registry regulations;

b. Whether Defendant had valid consent for calls to the cell phone numbers of Plaintiff and the other class members;

c. Whether Defendant should be held liable for call violations made by Defendant and/or on Defendant's behalf; and

d. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other class members are entitled to treble damages under 47 U.S.C. § 227(b)(3) or (c)(5).

59. Plaintiff's claims are typical of the claims of the other members of the class. The factual and legal bases of liability are the same: Defendant violated the TCPA by causing multiple unsolicited telephone solicitations and telemarketing calls to be made to the telephone number of each member of the class above, despite such numbers' registration on the National Do Not Call Registry.

60. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

61. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of class members, such that

joinder of all members is impracticable.

62. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

63. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual class members, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

64. The identities of the classes are, on information and belief, readily identifiable from Defendant's records and/or its agents' and vendors' records.

**COUNT I**
**Violations of the National Do Not Call Registry Provisions of the TCPA, 47 C.F.R. § 64.1200(c)(2)**

65. Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this Count I on behalf of himself and the DNC Registry Class.

66. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her residential landline or cellular telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

67. Defendant violated the TCPA by initiating and/or causing to be initiated multiple telephone solicitations to Plaintiff and the other members of the Class in a 12-month period, despite those persons' registration of their telephone numbers on the National Do Not Call Registry. These calls were made without regard to whether or not Defendant had previously

obtained express permission from the called party to make such calls. In fact, Defendant did not have consent to call the cell phones of Plaintiff and the other members of the Class when the calls were made.

68. To the extent that some of the calls to Plaintiff and the Class were made by vendors of Defendant, Defendant is also liable for those calls based on theories of direct liability, actual authority, apparent authority, and ratification (among others), because these calls were made on its behalf.

69. Defendant is not entitled to any "established business relationship," "prior express invitation or permission," or other defense that might privilege it to make these calls.

70. These violations were willful or knowing.

71. As a result of Defendant's violations of the TCPA's National Do Not Call Registry regulations, Plaintiff and the other members of the class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

72. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the DNC Registry Class, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein, and appointment of Plaintiff as class representative and his attorneys as class counsel;

B. Damages, pursuant to 47 U.S.C. § 227(c)(5);

C. Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at preventing Defendant and its agents and (sub)vendors from violating the TCPA in the future;

D. An injunction prohibiting each Defendant from relying upon consent derived from third-parties such as lead generators, to try to establish an Existing Business Relationship, as well as a declaration to this effect, too;

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violation of the Texas Telephone Solicitation Act**
**(Tex. Bus. & Com. Code § 305.001 *et seq*.)**

73. Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this Count II on behalf of himself and the Texas Sub-Class.

74. The Texas Telephone Solicitation Act, Texas Business & Commerce Code § 305.001 *et seq*. (the "Texas Act"), provides that a violation of the TCPA likewise constitutes a violation of the Texas Act.

75. Specifically, the Texas Act states that a person who receives a communication that violates 47 U.S.C. § 227, a regulation adopted under that provision, or Subchapter A of Chapter 305 may bring an action in Texas for injunctive relief, damages, or both. Tex. Bus. & Com. Code § 305.053(a).

76. As alleged above, Defendant made or caused to be made multiple telephone solicitations to Plaintiff and members of the Texas Sub-Class at telephone numbers registered on the National Do Not Call Registry for more than 31 days, without prior consent to do so or an established business relationship.

77. These calls violated 47 C.F.R. § 64.1200(c)(2) and therefore violate the Texas Act. 47 C.F.R. § 64.1200(c)(2); Tex. Bus. & Com. Code § 305.053(a).

78. Defendant's conduct constitutes multiple violations of the TCPA, which

violations trigger a private right of action under Tex. Bus. & Com. Code § 305.053.

79. Defendant's violations were not accidental or isolated, but instead were the result of systematic joint business practices designed to generate and monetize consumer marketing leads without adequate regard for consent or legal compliance.

80. As a direct and proximate result of Defendant's violations, Plaintiff and members of the Texas Sub-Class suffered harm, including invasion of privacy, nuisance, and disruption of their daily lives.

81. As a result of Defendant's violations of the Texas Act, Plaintiff and the Texas Sub-Class seek statutory damages of $500 per violation, or their actual damages if greater, pursuant to Tex. Bus. & Com. Code § 305.053(b), and treble damages for any violations found to have been committed knowingly or intentionally, pursuant to Tex. Bus. & Com. Code § 305.053(c), together with injunctive relief, costs, and attorneys' fees where authorized by law.

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Texas Sub-Class, respectfully requests that the Court enter judgment against Defendant for:

A. Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to anyone who asked Defendant to stop;

C. Judgment in favor of Plaintiff and all Texas Sub-Class members for statutory damages of $500 for each violation of the Texas Act and $1,500 for each knowing or willful violation;

D. Certification of the Texas Sub-Class as alleged herein, and appointment of Plaintiff as class representative and his attorneys as class counsel;

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 26, 2026

ROBERT HOSSFELD, individually and on behalf of others similarly situated

By: *<u>/s/ Alexander H. Burke</u>*

Alexander H. Burke
Kyle McLean
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com
KMclean@ BurkeLawLLC.com

*Counsel for Plaintiff*

**Document Preservation Demand**

Plaintiff demand that Defendant preserve all records, and direct that all (sub)vendors, agents, and other third parties with relevant documents or data do so, too. Pursuant to their contractual and extracontractual rights and privileges, including for example the TSR 16 C.F.R. § 310.5(a)-(f) (2024), Defendant is directed to obtain all call data, lead or opt-in data, and other relevant documents from all applicable (sub)vendors or third parties – particularly if they are located overseas – ***before*** terminating or otherwise taking any steps that might alter their relationship with them.

Our experience is that lead generators and other vendors often remove customer access to call records upon termination. Defendant should gather these records first, before taking any steps that might remove access to these types of records. Plaintiff will assist with reasonable costs of preservation; please contact the attorneys listed here to discuss.

By: *_/s/ Alexander H. Burke_*